IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20 C 5297 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Maria T. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB on April 24, 2017, alleging disability since September 5, 2014 due to problems with her spine, hips, and knees. (R. 353, 385). She subsequently amended the alleged disability onset date to July 15, 2018. (R. 383). Born in 1968, Plaintiff was at all relevant times a person closely approaching advanced age (age 50-54). (R. 353); 20 C.F.R. § 404.1563(d). She has an eighth grade education from Mexico

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

and lives in a house with her adult daughters. (R. 46-47, 386). From March 1998 to September 2014, Plaintiff worked as a hand packager in a meat packing plant. (R. 386). She stopped working on September 5, 2014 due to her conditions and has not engaged in any substantial gainful activity since that date. (R. 385).

The Social Security Administration denied Plaintiff's applications initially on June 5, 2017, and again upon reconsideration on October 21, 2017. (R. 103-28). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Michael Pendola (the "ALJ") on March 22, 2019. (R. 37). The ALJ heard testimony from Plaintiff, who was represented by counsel and testified with the assistance of a Spanish interpreter, and from vocational expert Heather Mueller (the "VE"). (R. 39-65). During a supplemental hearing on August 27, 2019, the ALJ heard additional testimony from Plaintiff, again with the assistance of counsel and a Spanish interpreter, and from medical expert Ronald K. Kendrick, M.D. (the "ME"). (R. 66-102). On September 26, 2019, the ALJ found that Plaintiff's dysfunction of major joints and depression are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-24). After reviewing the medical evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work involving: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and frequent stooping, kneeling, crouching, and crawling. (R. 24). Plaintiff can also perform simple and routine tasks with no fast-paced production requirements, tolerate occasional changes in the work setting, and have occasional interaction with supervisors, coworkers and the general public. (R. 24-28).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could not perform her past hand packager job, but could still do a significant number of other jobs available in the national economy, including cleaner II, lab equipment cleaner, and industrial cleaner. (R. 28-29). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the July 15, 2018 alleged disability onset date through the date of the decision. (R. 29). The Appeals Council denied Plaintiff's request for review on July 13, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). See *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding that her fibromyalgia is not a severe impairment; (2) improperly rejected all of the opinions of record in finding her capable of medium work; and (3) failed to consider evidence that supported her claim of disability. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of whether Plaintiff has the RFC to perform medium work.

## **DISCUSSION**

**A.    Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making

3

credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. §

404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves considering whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id*.

**C.      Analysis**

    **1.      Physical RFC Determination**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that she has the RFC to perform medium work without a proper medical basis. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, at *1-2. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

In determining that Plaintiff can do medium work, the ALJ focused primarily on objective exams showing that following right knee surgery on December 30, 2013, Plaintiff consistently presented with full muscle strength of 5/5 in all extremities, and no sensory,

5

motor, or neurological deficits. (R. 25, 493-94, 536, 585, 800-01, 804-05, 808, 810, 826, 831, 833, 840). The ALJ also found it significant that imaging test results of the knees and spine were generally mild with no definitive tears. For example, an April 28, 2017 x-ray of the cervical spine showed mild scoliosis, mild C3-C4 and C6-C7 degenerative disc disease, and minimal lumbar degenerative disc disease. (R. 554-55, 563-64). Bilateral knee x-rays taken on March 14, 2018 showed evidence of unilateral joint space loss consistent with osteoarthritis and mild degenerative changes. (R. 25, 763, 765). A May 2, 2018 MRI of the left knee revealed mild patellofemoral compartment osteoarthritis, trace joint effusion, and subtle increased signal within posterior horn medial meniscus likely related to intrasubstance degeneration. (R. 25, 773). X-rays of Plaintiff's spine taken on May 2, 2018 showed mild degenerative changes, anterior osteophytes at C6-C7, and loss of intervertebral disc space most advanced at C6-C7. (R. 780-82). An August 13, 2018 MRI of the right knee revealed mild degenerative change in the patellofemoral compartment. (R. 25, 788). And bilateral knee x-rays dated July 10, 2019 showed stable mild degenerative changes with no acute osseus abnormalities. (R. 25, 893).

  The problem with the ALJ's heavy reliance on objective imaging is that Plaintiff was also diagnosed with fibromyalgia, "a common, but elusive and mysterious disease" the presence and severity of which cannot be measured with laboratory tests. *Madrigal v. Saul*, No. 19 C 1349, 2020 WL 2064087, at *4 (E.D. Wis. Apr. 29, 2020) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Plaintiff's primary care physician Mohemad R. Khaleel, M.D. was the first to suspect the diagnosis on May 16, 2019 (R. 833-34), and rheumatologist Carmelita J. Colbert, M.D., confirmed it on July 11, 2019

6

after noting that Plaintiff had multiple fibromyalgia tender spots in the hands, knees, ankles, and spine. (R. 886-87).

The ALJ acknowledged that Plaintiff suffers from fibromyalgia but concluded that it is not a severe impairment because "medical records documented no persistent symptoms of fibromyalgia." (R. 22). It is not clear what symptoms the ALJ considered to be attributable to Plaintiff's fibromyalgia, or how he measured their severity. Throughout 2017, 2018, and 2019, Plaintiff complained of pain and swelling in her knees, as well as pain in her neck, back, and shoulders that was not relieved with medication (Tylenol #3, Naproxen, Flexeril, Tramadol, and Vicoprofen). She also reported other symptoms that are associated with fibromyalgia, such as dizziness, pain all over her body, headache, numbness, weakness, anxiety, and depression. And she needed a cane to ambulate, wore a brace on her left knee, and fell several times. (R. 615, 617, 620, 656, 659, 718, 724, 726, 741, 745-47, 759-61, 760, 766, 800, 804, 806, 808, 810, 811, 826-27, 831-33, 837, 840, 860). *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (noting that dizziness and "pain all over" are symptoms associated with fibromyalgia). To the extent the ALJ viewed Plaintiff's fibromyalgia symptoms as mild simply because of her full strength, the mild diagnostic imaging, and the lack of neurological or sensory deficits, that assessment is not supported by substantial evidence. *See Madrigal*, 2020 WL 2064087, at *4 ("[T]hose suffering from [fibromyalgia] have muscle strength, sensory functions, and reflexes that are normal."). *See also Revels v. Barnhart*, 874 F.3d 648, 656 (9th Cir. 2017).

Even more concerning is the fact that the ALJ rejected every opinion of record in finding that Plaintiff can perform medium work. Since Plaintiff filed her claim in April 2017,

7

the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)).

The ME is the only physician of record who considered Plaintiff's functional capacity in light of the fibromyalgia diagnosis. At the August 27, 2019 hearing, the ME opined that Plaintiff's fibromyalgia is a severe impairment, and that she is able to perform at most sedentary to light level work. (R. 22, 81-82). In finding this opinion not persuasive, the ALJ first observed that the ME "did not see any trigger points of fibromyalgia." (R. 22, 28, 89). Since Dr. Colbert affirmatively identified multiple trigger

8

points on July 11, 2019, however, the fact that the ME missed that evidence in reviewing the record does not support rejecting his opinion outright. (R. 886-87). There is no dispute that Plaintiff was diagnosed with fibromyalgia, and the presence of trigger points does not speak to the severity of her symptoms or her functional ability. *Desmangles v. Saul*, No. 20 C 3039, 2021 WL 3007270, at *4 (N.D. Ill. July 15, 2021) ("The ALJ must be mindful that the symptoms of fibromyalgia are 'entirely subjective.'").

The ALJ also suggested that Plaintiff's fibromyalgia cannot be severe because she is not taking any related medications. (R. 22, 89) (noting that Plaintiff was taking tizanidine, gabapentin, and amitriptyline). Yet the ALJ failed to acknowledge evidence that Plaintiff was unable to afford the fibromyalgia drug Lyrica since it was not covered by her insurance. (R. 835). *See Charles S. v. Berryhill*, No. 17 C 7438, 2019 WL 764059, at *6 (N.D. Ill. Feb. 21, 2019) (citing *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)) (ALJs cannot draw a negative inference from a claimant's failure to pursue medical care without first determining whether the claimant had a "good reason" for the non-compliance, such as an inability to afford treatment).

As for Plaintiff's functional limitations, the ME testified that she can: occasionally lift 15 pounds; frequently lift 10 pounds; stand and walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and never be around workplace hazards. (R. 81-83). The ALJ found these restrictions contrary to evidence showing that Plaintiff has only mild knee osteoarthritis, mild cervical spondylosis, and mild scoliosis. (R. 27-28). But the ME explained that "you can't translate – or transfer what the X-rays show[], into what the patient is going to feel," and specifically noted that "the

9

fact that [Plaintiff] also has a diagnosis of fibromyalgia, which is pain producing, in combination with other minimal degenerative spinal disease" supported the sedentary to light work profile. (R. 93). This testimony is consistent with the Seventh Circuit's admonition against "overstat[ing] test results" in fibromyalgia cases. *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018). *See also Bay v. Berryhill*, No. 16 C 9525, 2018 WL 615679, at *5 (N.D. Ill. Jan. 29, 2018) (remand required where the ALJ improperly discounted medical opinion based on exams showing normal strength and range of motion).

Significantly, state agency reviewer Vidya Madala, M.D. similarly concluded on October 24, 2017 that Plaintiff was limited to light work and needed a hand-held assistive device for ambulation. (R. 121-23). This assessment is arguably consistent with the September 16, 2017 Internal Medicine Consultative Examination performed by Ayodeji Gbotosho, M.D., which showed: an inability to squat or stand on one foot; moderate to severe difficulty getting on and off the exam table; inability to walk more than 50 feet without support; inability to toe/heel walk; antalgic gait; bilateral hip tenderness; moderate to severe bilateral knee tenderness; and reduced range of motion in the lumbar spine with severe tenderness. (R. 725-26). The ALJ did not mention the consultative exam, and in finding Dr. Madala's opinion unpersuasive, he relied once again on normal objective testing, including the lack of established motor deficits, normal neurological examinations, and the lack of "definitive tears on the radiological evidence." (R. 27). Though Plaintiff was not formally diagnosed with fibromyalgia until May 2019, she likely had some of the symptoms before that date. At a minimum, the ALJ should have explained why Dr. Madala's opinion remained unpersuasive notwithstanding the fibromyalgia diagnosis.

The only other opinion in the record is from state agency reviewer Bhareti Jhaveri, M.D., who determined on May 31, 2017 that Plaintiff has no functional limitations. But this opinion was based on Dr. Jhaveri's conclusion that Plaintiff has no severe impairments at all, a position the ALJ rejected. (R. 27, 107-08). Having found all of the opinions of record unpersuasive, it is not clear how the ALJ determined that Plaintiff has the RFC for medium work despite her joint dysfunction and fibromyalgia. *See Eggleston v. Colvin*, No. 13 C 5208, 2015 WL 2208221, at *4 (N.D. Ill. May 7, 2015) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)) ("ALJs may not simply substitute their judgment for that of a physician."). The concern is that the ALJ chose medium level work because anything less would have resulted in a finding that Plaintiff is disabled under the Medical-Vocational Guidelines given her educational background and age (nearly 52 as of the September 26, 2019 decision date). *See Rainey v. Berryhill*, 731 F. App'x 519, 524 (7th Cir. 2018) (citing 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00 *et seq*.).

Viewing the record as a whole, the ALJ did not build a logical bridge between the evidence and his conclusion that Plaintiff can perform medium work. The case must be remanded for further consideration of this issue.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review all aspects of Plaintiff's RFC, including her mental functioning. In that regard, the ALJ found the September 27, 2017 opinion from state agency reviewer Steven Fritz, Psy.D. persuasive and agreed that Plaintiff has moderate limitations in concentration, persistence, or pace. (R. 23, 124). Yet the ALJ omitted Dr. Fritz's restriction to "one and two-step tasks" without

providing an explanation. (R. 23, 24, 27, 125). The ALJ should also obtain updated evidence on Plaintiff's treatment history and her need for a walker.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [18] is granted, and the Commissioner's motion for summary judgment [22] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: September 1, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge